IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 7, 2020 Session

## MARQUETTE JONES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 14-03149        Paula L. Skahan, Judge**

_____

### No. W2019-00399-CCA-R3-PC
_____

The Petitioner, Marquette Jones, appeals the denial of his petition for post-conviction relief. Following our review, we affirm the judgment of the post-conviction court denying the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE JJ., joined.

Lance R. Chism, Memphis, Tennessee (at hearing and on appeal), for the appellant, Marquette Jones.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Teresa McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On July 1, 2014, the Petitioner and a co-defendant were jointly indicted by the Shelby County Grand Jury for especially aggravated kidnapping, aggravated robbery, and evading arrest. On December 1, 2015 the Petitioner pled guilty to the offenses in exchange for concurrent sentences as a Range I offender of sixteen years at 100% for the especially aggravated kidnapping conviction, nine years at 85% for the aggravated robbery conviction, and eleven months, twenty-nine days for the evading arrest

conviction, for an effective sentence of sixteen years in the Department of Correction. The Petitioner stipulated to the following factual basis for the pleas recited by the prosecutor at the guilty plea hearing:

> Had [the Petitioner] gone forward with trial the State would have shown that on March 11, 2014  911 received a call from a witness name[d] Ms. Cox who indicated that she had walked out of Beale as she witnessed two male blacks approach an individual and put him on the ground and then hold him at gunpoint while they took his wallet from him.
>
> They then forced him into the vehicle.  As she was speaking to 911 she was able to tell them the direction that that vehicle, a Ford F150[,] traveled.  As she continued to speak to 911 she was able to tell them that the vehicle had turned around and was heading back her direction.  She was able to even inform dispatch when police officers got behind that vehicle.
>
> When police officers got behind that vehicle two individuals bailed out of the vehicle and started running.  They were apprehended.  Those individuals was [sic] [the Petitioner's] co-defendants, [sic] Mr. Walton. One was seen to throw a handgun.  As he fled the scene the handgun was recovered.
>
> The victim in that matter, Mr. Andrew McKinney, was also left in the vehicle.  After officers realized that he was indeed a victim and not one of the perpetrators, he was brought down and was given a statement [sic] and indicated that he had been placed on the ground and robbed at gunpoint and forced back into his car because he didn't have enough money to go to an ATM.
>
> On the way to the ATM he told police officers that individuals realized that that particular ATM that they were heading to had security cameras so they wanted him to go to yet a different ATM.  And it was all backtracked back through Beale Street the place that they left.  That's when officers got behind the vehicle.

On December 1, 2016 the Petitioner filed a pro se petition for post-conviction relief in which he raised claims of ineffective assistance of counsel and involuntary and unknowing guilty pleas.  Following the appointment of post-conviction counsel, he filed an amended petition alleging that his guilty pleas were not knowingly, voluntarily and intelligently entered and that he received ineffective assistance of counsel because counsel failed to explain to him that, pursuant to the holding in State v. White, 362

S.W.3d 559 (Tenn. 2012), the jury in his case, "after being properly instructed, may conclude that the facts in his case support a conviction only for aggravated robbery (and not a conviction for especially aggravated kidnapping)."

At the evidentiary hearing, trial counsel testified that he began practicing law in 2010, primarily focused on criminal law. By the time he was appointed to represent the Petitioner in August 2015, he had handled approximately a dozen jury trials, including approximately three or four cases that involved Class A and Class B felonies. He recalled that he and the Petitioner met at least two or three times at court settings from August 2015, when he was appointed, until the Petitioner entered his guilty pleas in December. Trial counsel explained that he was appointed after a trial date had already been set due to the Petitioner's having developed a serious conflict with prior counsel.

Trial counsel testified that the Petitioner did not want to go to trial but was also unhappy with the plea that had been offered of fifteen years for the especially aggravated kidnapping and eight years for the aggravated robbery. He said the Petitioner maintained that it was his co-defendant who committed the crimes, did not think he was responsible, and did not think it fair that he had been charged with his co-defendant. By the Petitioner's account, he had merely been present when his co-defendant committed the crimes. Trial counsel stated that he discussed with the Petitioner "at great lengths" the concept of criminal responsibility and the minimum sentences for the offenses. He said most of their discussions revolved around attempting to obtain a better plea offer from the State. Trial counsel believed that the prosecutor increased the plea offer to sixteen years after becoming irritated at the Petitioner's not wanting to either accept the plea that had already been offered or set the case for trial.

Trial counsel testified that he discussed with the Petitioner in depth the charges and the elements the State would have to prove to convict. He said he was not familiar with the White opinion at the time and could not recall the Petitioner's having ever sent it to him. Had the Petitioner done so, he was confident he would recall it. When shown a letter to him from the Petitioner, he testified that he did not remember having ever received any letter from the Petitioner.

Trial counsel testified the State reached a point when it was prepared to revoke any offer. He said the Petitioner never wanted to go to trial; he simply wanted an offer that involved less than fifteen years. Trial counsel stated that he was prepared to go to trial but advised the Petitioner to accept the plea offer because of the potential exposure he faced if convicted of the offenses at trial. However, he also told the Petitioner that it was his decision alone. Because the Petitioner did not want to go to trial, he ultimately accepted the sixteen-year offer from the State.

Trial counsel testified that he would not have changed anything in his representation had he been aware of <u>White</u> at the time, as he believed the facts in the Petitioner's case were very different from those in <u>White</u>:

> And even looking at the White case now, you know, since you've given it to me, there wouldn't have been any information in the White case that I feel would have changed anything. If I would have had the White case then, looking at it now, I would have explained to him the same thing: That the facts of that case aren't even close to the facts of his case.

Trial counsel testified that the Petitioner was not happy about pleading guilty in exchange for a sixteen-year sentence but did not want the alternative of going to trial. He said he thought the Petitioner was "particularly frustrated that [the State] increased it from 15 to 16 years."

On cross-examination, trial counsel agreed that he was appointed to represent the Petitioner on August 24, 2015, and that the Petitioner's case had been set for trial that day. He reiterated that he had never received the letter from the Petitioner asking him about the <u>White</u> case, and, when shown the letter again, testified that it was dated August 3, 2015, which was before he was appointed. He repeated that the Petitioner never expressed any desire to go to trial and mainly expressed his unhappiness with the plea offer. He said the Petitioner appeared to understand the concept of criminal responsibility but that he thought it was unfair. He stated that he and the Petitioner got along well and never had any problems communicating. Finally, he testified that he believed the Petitioner entered his pleas knowingly, intelligently and voluntarily.

On redirect examination, trial counsel testified that he told the Petitioner that they "would have a very hard time coming out from each of the counts." He said he repeatedly talked to the Petitioner about what the State would have to prove for each count without connecting the two together: "[T]here was never any instruction that linked the two; it was always them having to show them independently of each other." Trial counsel testified that he told the Petitioner that the trial court was unlikely to order consecutive sentences if the Petitioner were convicted of the offenses at trial but that the Petitioner could be sentenced at the high end of the range for each offense.

The Petitioner testified that trial counsel visited him once in jail, where the Petitioner asked him about the <u>White</u> case. He also identified the August 3, 2015 letter as one that he had sent to trial counsel. According to the Petitioner, he sent the letter in October and the August 3 date was "an honest mistake." He said that trial counsel told him he had received the letter but that <u>White</u> was inapplicable to his case.

The Petitioner testified that he wanted to go to trial. He said he told trial counsel that he had robbed someone and was guilty of a robbery but was not guilty of kidnapping. Trial counsel never told him that the jury would be instructed that he could not be found guilty of kidnapping if the kidnapping was incidental to the robbery. Had trial counsel explained that legal concept to him, he would not have pled guilty because he thought "the jury probably would have just found [him] guilty on the aggravated robbery, and not the especially aggravated kidnapping."

The Petitioner testified that he again brought the White case up to trial counsel on the day he entered his pleas, but counsel told him they could not worry about it right then. He said he felt pressured into pleading guilty because trial counsel "wasn't really trying to help [him]."

On cross-examination, the Petitioner was unable to remember what day trial counsel visited him in jail. He acknowledged he informed the trial court at his guilty plea hearing that he was satisfied with counsel's representation and had no complaints about him. He further acknowledged that he could have received much more time at trial, that it was his decision to plead guilty, and that he was not forced to enter his pleas.

On January 28, 2019, the post-conviction court entered an order denying the petition. Among other things, the court found that "[t]rial counsel's discussion of the law covered the necessary elements required to secure a conviction against Petitioner and reflected that the State would be required to prove each offense independently." The court therefore concluded that the Petitioner failed to prove by clear and convincing evidence that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. The court further concluded that, even if counsel was deficient for not discussing the holding in White, the Petitioner failed to show by clear and convincing evidence that counsel's failure to discuss White resulted in prejudice to the Petitioner's case.

As for the Petitioner's claim of unknowing and involuntary guilty pleas, the court noted that the Petitioner's own testimony was that no one had coerced him into entering his pleas. The court also noted the Petitioner's responses during the plea colloquy that he was satisfied with counsel's representation, understood the charges against him, the terms of his plea agreement, and the rights he was waiving by pleading guilty, and that it was his decision to enter the pleas. The Court, therefore, concluded that the Petitioner also failed to show by clear and convincing evidence that his guilty pleas were unknowing, unintelligent, and involuntary.

## ANALYSIS

- 5 -

On appeal, the Petitioner argues that trial counsel's failure to explain to the Petitioner the legal concept set forth in White, which was released approximately three years prior to counsel's appointment, constituted a deficiency in performance that resulted in prejudice to his case. The Petitioner asserts that he would not have pled guilty had trial counsel explained the White holding to him. The State responds by arguing that the post-conviction court properly found that the Petitioner failed to show by clear and convincing evidence that counsel was ineffective or that his guilty pleas were unknowing and involuntary. We agree with the State.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.,* a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. Boykin, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to ensure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

In denying the petition, the post-conviction court accredited trial counsel's testimony about his preparation for the case and his thorough discussions with the

Petitioner with respect to the elements of each offense, the proof against the Petitioner, the theory of criminal responsibility for the actions of another, the pros and cons against going to trial, and the Petitioner's desire to avoid a trial. The court also noted the plea colloquy in which the Petitioner assured the trial court that he fully understood his plea agreement, that he was satisfied with counsel's representation, and that he was entering his pleas knowingly and voluntarily, as well as the Petitioner's evidentiary hearing testimony that he was not coerced into entering his pleas.

We note that the Petitioner testified at the evidentiary hearing that he was familiar with the White case at the time he entered his pleas. The Petitioner, in fact, appeared to have not only been familiar with the case by name but also to have had a grasp of the legal concepts in the case. In the letter dated August 3, 2015 that he allegedly sent to trial counsel in October 2015, he states that he was told about the case, that he and his previous counsel could not come to an agreement about it, but that his understanding was that the jury "could find [him] not guilty because only a robbery occurred." Thus, we conclude that the evidence does not preponderate against the findings and conclusions of the post-conviction court that the Petitioner failed to meet his burden of showing that he was denied the effective assistance of counsel or that his guilty pleas were unknowing, unintelligent and involuntary.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court.

_____
ALAN E. GLENN, JUDGE

- 8 -